```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
M.K.B, O.P, L.W., M.A., MARIEME      :
DIONGUE, M.E., P.E., ANNA FEDOSENKO, :
A.I., L.M., L.A.M., L.M., DENISE     :
THOMAS, AND J.Z., on their behalf,   :
and on behalf of their minor children:
and all other similarly situated,    :
                                     :
                    Plaintiffs,      :
                                     :    05 Civ. 10446 (JSR)
              -v-                    :
                                     :    MEMORANDUM
VERNA EGGLESTON, as Commissioner of  :
the New York City Human Resources    :
Administration; ROBERT DOAR, as      :
Commissioner of the New York State   :
Office of Temporary Disability       :
Assistance; and ANTONIA C. NOVELLO,  :
as Commissioner of the New York State:
Department of Health,                :
                                     :
                    Defendants.      :
------------------------------------ x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/4/12

JED S. RAKOFF, U.S.D.J.

In 2006, the Court issued a preliminary injunction necessary to help correct systemic deficiencies in New York City's and New York State's distribution of state and federal benefits to the battered immigrant spouses and children of United States citizens. See generally M.K.B. v. Eggleston, 445 F. Supp. 2d 400 (S.D.N.Y. 2006). Rather than proceed to trial, the parties entered into a "Stipulation and Order of Settlement" on June 26, 2007 that governed the defendants' provision of those benefits and was intended to eliminate the prior deficiencies. See Stipulation and Order of Settlement dated June 26, 2007, Docket #172 ("Stipulation"). The Stipulation provided

that its prophylactic and corrective measures would be undertaken over a period of four years and that, at the end of that period, the plaintiffs could move in accordance with certain terms for an extension. Stipulation ¶¶ 66, 68-69. On June 23, 2011, the plaintiffs moved to extend the stipulation against all defendants. The Commissioner of the New York City Human Resources Administration ("HRA") agreed with plaintiffs to extend the term of the Stipulation until February 15, 2013. See Stipulation and Order of Settlement dated June 29, 2011, Docket #197. The New York State defendants, in contrast, opposed extension as to them. After full briefing, an evidentiary hearing, and careful consideration of the parties' arguments, the Court, on September 30, 2011, issued a "bottom-line" Order extending the Stipulation against the State defendants until February 15, 2013, the date until which it was extended against the City defendant. This Memorandum explains the reasons for that decision.

Paragraph 69 of the Stipulation - hardly a model of tight drafting - provides that:

> In the event that plaintiffs make a motion to extend pursuant to ¶ 68 to extend jurisdiction against City defendant based upon <u>conduct</u> related to the provision of Family Assistance, Federal Medicaid and/or Food Stamps <u>required to be monitored</u> by either or both State defendant(s) pursuant to this Stipulation, plaintiffs may move the Court for an order extending jurisdiction against the State defendant(s) responsible for monitoring such conduct pursuant to this Stipulation. (emphasis added)

2

To put this provision in context, one needs to remember that, under the Stipulation, the New York Office of Temporary and Disability Assistance ("OTDA") had to review one of every four cases reviewed by HRA to determine, among other things, whether HRA should have designated any member of the applicant household as a recipient of Food Stamps. Stipulation ¶ 60. Similarly, the New York State Department of Health ("SDOH") had to review fifteen applications that the HRA denied with respect to certain benefits in order to determine whether the HRA should have designated any member of the applicant household as a recipient of Medicaid. Stipulation ¶ 61. Plaintiffs' motion to extend the Stipulation alleged that the HRA systematically misinformed class members about their eligibility for Food Stamps and Medicaid and erroneously denied those benefits to many class members. See, e.g., Decl. of R.W. dated March 17, 2011, Docket #184, ¶ 6. As noted, the City, rather than contesting these allegations, agreed to extend the Stipulation through February 15, 2013. The OTDA and the SDOH also do not dispute that the HRA has systematically and erroneously denied plaintiffs benefits, the provision of which OTDA and SDOH had at least some responsibility for monitoring.

Instead, the parties dispute the meaning of "conduct . . . required to be monitored." Plaintiffs contend that this phrase indicates the HRA's conduct in providing benefits, a sample of which the ODTA and the SDOH had to monitor to ensure compliance. In contrast, the State argues that "conduct . . . required to be

3

monitored" means only the particular sample of HRA conduct that the agencies actually monitored. The Court found both constructions plausible, and it held an evidentiary hearing on August 24, 2011 to discover what the parties intended when they drafted the stipulation.

In support of their interpretation of the critical phrase, plaintiffs note that the initial drafts of the stipulation did not distinguish between extending the stipulation against the City and the State defendants. Pl.'s Ex. 2A ¶ 9. During later negotiations, however, the parties differentiated between the City and the State defendants and agreed that plaintiffs could extend against the State based only on the State's own systemic non-compliance. See Pl.'s Ex. 5A ¶ 69. Unsatisfied with Paragraph 69 as it then stood, however, plaintiffs proposed to add an additional basis for extending against the State defendants so that plaintiffs would remain able to obtain State assistance to enforce the stipulation against the City even if the State had complied with the Stipulation so far as its own activities were concerned. See Transcript of 8/24/11 ("Tr.") at 13:25-14:4. The defendants agreed, and the parties added much of the relevant language (including "conduct . . . required to be monitored") to Paragraph 69 as a result. Pl.'s Ex. 6A ¶ 69. According to the plaintiffs, this addition protected an important interest. The plaintiffs might need cooperation from the State in order to obtain appropriate relief under the Stipulation from the City. Tr. at 14:7-21; cf. In re Beaudoin v. Toia, 45 N.Y.2d 343, 347 (1978) ("[T]he

4

local commissioners act on behalf of and as agents for the State."). Thus, in the event that the State complied with the Stipulation, but the City did not, the language noted above would allow the plaintiffs to ensure the cooperation from the State that they needed to obtain complete relief from the City.  Tr. at 14:7-21.

Subsequently, the State defendants requested further modification of Paragraph 69.  Specifically, they asked for the insertion of "related to the provision of Family Assistance, Federal Medicaid and/or Food Stamps" between "conduct" and "required to be monitored."  Pl.'s Ex. 7A.  According to the plaintiffs, this addition ensured that the State retained its immunity under the Eleventh Amendment from suits against the State based on the provision of state benefits.  Tr. at 22:14-21.

Based on this evidence, plaintiffs make two arguments. First, plaintiffs argue that interpreting "conduct . . . required to be monitored" as the State now does would subvert plaintiffs' purpose in requesting this language.  If the plaintiffs had to prove that the specific cases the OTDA and the SDOH monitored contained systemic non-compliance, then they would not be able to extend the Stipulation against the State where the City engaged in systemic non-compliance but where the sample of cases those agencies monitored happened, by chance, not to contain evidence of that non-compliance.  Tr. at 14:7-21.

5

Second, plaintiffs argue that the drafting history provides further support for their interpretation. As noted above, the State defendants requested that the parties add "related to the provision of Family Assistance, Federal Medicaid and/or Food Stamps" to Paragraph 69 in order to preserve its immunity from challenges based on the City's provision of state benefits. According to plaintiffs, this addition reveals that "conduct . . . required to be monitored" included more than what the state agencies actually inspected. Had the parties understood "conduct . . . required to be monitored" in the limited way that the State contends, then specifying a relationship to federal benefits would have accomplished nothing since, under Paragraphs 60 and 61, the State monitored only determinations that "related to" the provision of federal benefits. Tr. at 20:6-12. For example, how the City classified plaintiffs with regard to certain state benefits that OTDA and SDOH monitored affected plaintiffs' ability to receive federal benefits. Id. at 20:16-22:9. Since the State had to monitor applications for state benefits, but only insofar as they related to federal benefits, the mention of federal benefits would be meaningless unless it clarified that violations that did not relate to federal benefits, while they occurred in the very applications the State had to monitor for other purposes, could not provide a basis for extending the Stipulation. Thus, "conduct . . . required to be monitored," according to plaintiffs, necessarily denotes the City's conduct in making determinations that "related to"

6

the provision of federal benefits, excluding the City's provision of other benefits that, while not itself "required to be monitored," might arguably form part of the same "conduct" that the State had to monitor.

The State defendants respond with three arguments favoring its interpretation. First, the State defendants note that the parties added the relevant language to Paragraph 69 as a limited exception to the general rule that plaintiffs could extend based only on the State's non-compliance. Tr. at 29:21-23. According to the State defendants, plaintiffs' interpretation does not limit the exception, but instead allows it to swallow the rule, permitting extension against the OTDA and SDOH whenever the City systematically fails to comply with the Stipulation. Tr. at 37:9-15. Second, the State defendants argue that, contrary to plaintiffs' claims, its monitoring reports included more than just federal Medicaid, also including Safety Net Assistance and State Medicaid. Tr. at 31:15-20. Thus, according to the State defendants, the specification of "Family Assistance, Federal Medicaid and/or Food Stamps" narrowed the bases on which the plaintiffs could extend the stipulation against the State even though, contrary to plaintiff's suggestion, it applied only to conduct the state actually monitored under Paragraphs 60-61. Third, the State defendants argue that, because the plaintiffs drafted the language in dispute, the Court should construe that ambiguous language against plaintiffs. Albany Savings Bank, FSB v. Halpin, 117 F.3d 669,

7

674 (2d Cir. 1997) ("New York contract law includes the rule that ambiguities in contracts should be construed against the drafter.").

The Court adopts plaintiffs' interpretation of "conduct . . . to be monitored." First, the Court declines the State defendants' invitation to find that the plaintiffs drafted the relevant language. While plaintiffs proposed the original language, the State defendants recommended the addition of "related to the provision of Family Assistance, Federal Medicaid and/or Food Stamps." Construing "related to" against the defendants would render the mention of federal benefits unnecessary, as plaintiffs argued, because even the State defendants acknowledge that a plaintiff's classification with regard to the relevant state benefits affects her eligibility for federal benefits. Tr. at 31:16-18. Thus, rather than bring the different words of the provision into conflict with each other by adopting the State defendants' approach, the Court regards the provisions as drafted jointly by both parties, an approach that reflects the back-and-forth negotiations described at the evidentiary hearing.

Second, plaintiffs' interpretation makes better sense of Paragraph 69 given the parties' intentions. Plaintiffs wanted to extend the Stipulation against the State defendants when the City systematically failed to comply with the Stipulation because they needed the State defendants' assistance in order to obtain complete relief from the City. The State defendants did not dispute this purpose, but instead tried to limit it. See Tr. at 37:7-9. While the

8

State defendants argue that their interpretation of "conduct . . . required to be monitored" is one such limitation, such a limitation would make little sense. By that interpretation, the State defendants would have prevented extension of the Stipulation only in the statistically anomalous event that systematic non-compliance by the City was not, through chance, reflected in the set of cases that the State defendants actually monitored. Such a limitation would only rarely and arbitrarily have force. Indeed, the State defendants' interpretation would frustrate the plaintiffs' abilities to obtain needed benefits based simply on bad luck. The parties could not reasonably have intended such an outcome. Accordingly, the Court adopts plaintiffs' interpretation of "conduct . . . required to be monitored," finding that it better realizes the intentions of both parties to the Stipulation.

Plaintiffs' interpretation of Paragraph 69 permits extension of the Stipulation against the State defendants based on the showing that plaintiffs have already made against the City. To resist this outcome, the State defendants make two final arguments. First, the State defendants argue that plaintiffs' broad construction of Paragraph 69 conflicts with Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007), which required plaintiffs to "prove . . . that the state defendants' inadequate supervision actually caused or was the moving force behind the alleged violations." Unlike in Reynolds, however, the plaintiffs base extension not on § 1983, but instead on a

Stipulation that the parties entered before <u>Reynolds</u>, at a time when the State defendants had incentives to consent to a less favorable standard than <u>Reynolds</u> ultimately imposed. <u>Reynolds</u> did not relieve the State defendants of their obligations under the Stipulation, and thus it is irrelevant.

Second, the State defendants argue that the plaintiffs did not provide the notice required by the Stipulation. Under Paragraph 69, plaintiffs must notify the State defendants of their intention to move to extend the Stipulation at least twenty days before doing so. Stipulation ¶ 69. Nonetheless, plaintiffs wrote to the State defendants regarding their intention to move to extend the Stipulation as early as May 13, 2011, see Decl. of Susan Welber dated June 23, 2011 Exs. 40 & 41. Moreover, plaintiffs mentioned the possibility of a motion to extend in a letter to the State defendants sent on June 3, 2011, exactly twenty days before the motion. Pl.'s Ex. 10. Notwithstanding this notification, the State defendants argue that the Stipulation requires a thirty day "meet and confer" period before plaintiffs can take "any action against defendants based on alleged non-compliance." Stipulation ¶ 65. Close reading of that paragraph, however, suggests that it applies only to actions to "enforce and/or modify" the Stipulation. <u>Id.</u> Given that Paragraph 69 contains its own notice-provision, one that the additional requirement in Paragraph 65 would render largely irrelevant, the Court concludes that the "meet and confer" requirement does not apply to motions to extend the

Stipulation. As noted above, the plaintiffs satisfied the applicable twenty-day notice requirement.

It was for the foregoing reasons that the Court issued its Order of September 30, 2011 extending the Stipulation against the State defendants until February 15, 2013.

SO ORDERED.

                                                    JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       January 3, 2012

11